IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CEDAR CREEK LAND & TIMBER, INC., *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) CIVIL ACTION 14-0565-WS-N<br>) |
| N. GUNTER GUY, JR., *et al.*, | )<br>) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on the Motion to Remand (doc. 5) filed by plaintiffs, Cedar Creek Land & Timber, Inc. and Pruet Production Company. The Motion has been briefed and is now ripe for disposition.

**I.     Background.**

Plaintiffs, Cedar Creek Land & Timber, Inc. ("Cedar Creek") and Pruet Production Co. ("Pruet"), brought this quiet title action against N. Gunter Guy, Jr., as Commissioner of the State of Alabama Department of Conservation and Natural Resources ("Commissioner Guy"), in the Circuit Court of Conecuh County, Alabama, on November 20, 2014. The Complaint alleges that Cedar Creek owns numerous tracts of real property in Conecuh and Covington Counties that abut or lie underneath the beds, bottoms and streams of the Sepulga River, Pigeon Creek and Bottle Creek (collectively, the "Waterways"). The Complaint further alleges that Pruet is engaged in the oil and gas exploration business, pursuant to which it has obtained oil, gas and mineral leases from Cedar Creek and other landowners, including leases for certain lands that lie beneath the beds and bottoms of the Waterways. According to the Complaint, Commissioner Guy has taken the position that the State of Alabama owns the beds and bottoms of the Waterways and has issued an invitation for bids to lease certain of those lands. The Complaint alleges that Commissioner Guy predicates this claim of State ownership on a "contention that said river and creeks are navigable waterways." (Complaint, ¶ 7.)

The Complaint delineates two causes of action.  The first claim, which plainly arises under state law, is labeled "Bill to Quiet Title" and seeks judicial determinations that "Cedar Creek is the owner of the lands described in this Complaint;" that "Pruet holds valid leases on the oil, gas and mineral rights lying underneath the streams, beds and bottoms of said river and creek under the land it has leased;" and that Commissioner Guy "has no right, title, claim or interest" in such lands.  (Complaint, at 4.)

The second claim is labeled "Complaint for Declaratory Judgment," and alleges that "[a] justiciable controversy exists between the Plaintiffs and Defendant as to the ownership of said oil, gas and mineral[]" interests underneath the Waterways.  (*Id.*, ¶ 21.)  This declaratory judgment claim identifies as a key issue the question of navigability of the Waterways.  Indeed, plaintiffs allege that the Waterways "are not navigable waterways and were not navigable waterways when the State of Alabama entered the Union on December 14, 1819;" and accuse the State of promulgating "conflicting and varying views as to whether" the Waterways "are navigable or not."  (*Id.*, ¶¶ 15-16.)  Plaintiffs further assert in their pleading that the State "attempted to legislate that certain portions of the Sepulga River and other rivers and streams were navigable waterways," and insist that the State was not permitted to do so where the effect would be to "take away property rights secured by the State and Federal Constitution."  (*Id.*, ¶ 17.)  The Complaint is silent as to why plaintiffs contend the navigable status *vel non* of the Waterways matters for purposes of their claim for declaratory judgment; however, the *ad damnum* clause confirms that the relief plaintiffs seek includes a declaration that the subject Waterways "are not navigable waterways" in the relevant areas.  (*Id.* at 7.)[1]

On its face, the Complaint did not and could not support diversity jurisdiction pursuant to 28 U.S.C. § 1332, inasmuch as plaintiff Cedar Creek and Commissioner Guy both appear to be Alabama citizens.  Nor was any federal question or cause of action presented on the face of the Complaint that might give rise to jurisdiction pursuant to 28 U.S.C. § 1331.  Nonetheless,

---

[1] That said, a plain reading of the Complaint suggests that the "navigable waterway" question is not the lone issue animating the ownership dispute presented in the claim for declaratory judgment.  For example, plaintiffs allege that patents to the subject property do not exclude lands that lie beneath the Waterways (*id.*, ¶ 18), that certain state legislative acts purporting to vest title in the State are invalid (*id.*, ¶ 17), and that the State "has taken contrary positions" as to ownership of the subject property (*id.*, ¶ 20).  These would appear to be additional / alternative grounds for plaintiffs' claim for declaratory judgment.

Commissioner Guy filed a Notice of Removal on December 15, 2014, removing this action to federal court and contending that jurisdiction is proper under § 1331 "in that the action arises under the equal footing doctrine of the United States Constitution." (Doc. 1, ¶ 4.) Plaintiffs now move for remand of this action to state court for lack of federal jurisdiction.

## II.     Analysis.

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must demonstrate the existence of federal jurisdiction. *See, e.g., Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) ("the burden of establishing removal jurisdiction rests with the defendant seeking removal"); *City of Vestavia Hills v. General Fidelity Ins. Co.*, 676 F.3d 1310, 1313 n.1 (11th Cir. 2012) ("The removing party bears the burden of proof regarding the existence of federal subject matter jurisdiction."). This burden applies equally in the context of a motion to remand. *See Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009) ("On a motion to remand, the removing party bears the burden of showing the existence of federal subject matter jurisdiction."). Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all jurisdictional doubts being resolved in favor of remand to state court. *See, e.g., Scimone*, 720 F.3d at 882 ("we strictly construe the right to remove and apply a general presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand") (citation and internal marks omitted).[2]

In his Notice of Removal, Commissioner Guy maintains that jurisdiction is proper under the federal question statute found at 28 U.S.C. § 1331. (*See* doc. 1, ¶ 4.) Pursuant to § 1331, federal courts possess "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* "The test ordinarily applied for determining whether a claim arises under federal law is whether a federal question appears on the face of the plaintiff's well-pleaded complaint." *Connecticut State Dental*, 591 F.3d at 1343; *see also Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 765 n.20 (11th Cir. 2010) (typically, "a defendant may remove

---

[2]     *See also Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1333 (11th Cir. 1998) (expressing preference for remand where removal jurisdiction is not absolutely clear); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) (uncertainties regarding removal are resolved in favor of remand).

on the basis of federal question jurisdiction only where that question appears on the face of the plaintiff's complaint"). On its face, the Complaint filed by Cedar Creek and Pruet does not assert a federal question, nor do their claims purport to have been created by the Constitution, laws or treaties of the United States; rather, Count One is a state-law claim to quiet title, and Count Two essentially seeks the same relief via the procedural vehicle of declaratory judgment.[3]

In briefing the Motion to Remand, the parties' analyses are steeped in the vernacular of this traditional "face of the complaint" rule, and its narrow exception for state-law claims that turn on substantial questions of federal law.[4] Defendant insists that a federal question is presented in Count Two (declaratory judgment), while plaintiffs disagree. Although neither side acknowledges as much, the jurisdictional framework and analysis differ in the context of a declaratory judgment claim. Notably, the "face of the complaint" rule is inapplicable to an assessment of whether § 1331 jurisdiction is proper for a declaratory judgment action. *See Stuart Weitzman, LLC v. Microcomputer Resources, Inc.*, 542 F.3d 859, 862 (11th Cir. 2008) ("in the context of a declaratory judgment action, the normal position of the parties is reversed; therefore, we do not look to the face of the declaratory judgment complaint in order to determine the presence of a federal question") (citation and internal quotation marks omitted). Instead, the rule

---

[3] The Complaint does not specify whether the declaratory judgment claim is asserted under the federal Declaratory Judgment Act or the Alabama Declaratory Judgment Act. Plaintiffs insist it was brought under the latter statute, and Commissioner Guy does not challenge that assertion. Of course, even if this claim were brought under the federal Declaratory Judgment Act, that fact alone would not establish federal jurisdiction. *See, e.g., Household Bank v. JFS Group*, 320 F.3d 1249, 1253 (11th Cir. 2003) ("[T]he operation of the Declaratory Judgment Act is procedural only."); *First Federal Sav. and Loan Ass'n of Lake Worth v. Brown*, 707 F.2d 1217, 1220 (11th Cir. 1983) ("The federal Declaratory Judgment Act … does not expand federal jurisdiction; the Act merely creates a new remedy in cases or controversies for which an independent basis of federal jurisdiction exists."). As such, whether this cause of action was asserted under the federal or the state statute creating a declaratory judgment remedy is jurisdictionally inconsequential.

[4] *See, e.g., Brown v. Endo Pharmaceuticals, Inc.*, --- F. Supp.2d ----, 2014 WL 3864626, *2 (S.D. Ala. Aug. 5, 2014) (explaining that "state-law claims asserted in a complaint may support § 1331 jurisdiction if those claims necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities") (internal quotation marks omitted) (citing *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1296 (11th Cir. 2008)).

is that "[f]ederal question jurisdiction exists in a declaratory judgment action if the plaintiff has alleged facts in a well-pleaded complaint which demonstrate that the defendant *could* file a coercive action arising under federal law." *Id.* (citation and internal quotation marks omitted).[5] The Supreme Court precedent from which the Eleventh Circuit derived the rule applied in *Stuart Weitzman* was pellucidly clear that it applies both in original jurisdiction and removal actions, and as to both federal declaratory judgment actions and state declaratory judgment actions. *See Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 17-19, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).[6]

The upshot is this: "[A] federal district court has subject-matter jurisdiction over a declaratory judgment action if … a plaintiff's well-pleaded complaint alleges facts demonstrating the defendant could file a coercive action arising under federal law." *Household Bank v. JFS Group*, 320 F.3d 1249, 1259 (11th Cir. 2003). Careful scrutiny of the Complaint filed by Cedar Creek and Pruet does not reveal factual allegations demonstrating that Commissioner Guy could have filed a coercive action against them arising under federal law. Any coercive action that Commissioner Guy might have brought to cancel Cedar Creek's or Pruet's leases, secure possession of the lands underneath the Waterways, or recover damages

---

[5] The declaratory judgment vehicle is purely procedural, so the relevant inquiry is whether the cause of action <u>anticipated</u> by the declaratory judgment plaintiff would arise under federal law. In other words, if declaratory relief did not exist, and the declaratory judgment defendant were to sue the declaratory judgment plaintiff for coercive relief, could that action have been brought in federal court? That is the pertinent jurisdictional question embodied by the above-cited rule. *See Stuart Weitzman*, 542 F.3d at 862.

[6] In *Franchise Tax Bd.*, the Supreme Court confronted the question of whether to extend the rule in *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950), to state-law declaratory judgment actions. *Skelly Oil* had analyzed the specific contours of the federal Declaratory Judgment Act and ultimately concluded that "if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking." *Franchise Tax Bd.*, 463 U.S. at 16 (citation omitted). The *Franchise Tax Bd.* Court held that "federal courts do not have original jurisdiction, ***nor do they acquire jurisdiction on removal***, when a federal question is presented by a complaint for a state declaratory judgment, but *Skelly Oil* would bar jurisdiction if the plaintiff had sought a federal declaratory judgment." *Id.* at 19 (emphasis added). The Court reinforced the point by observing that "for purposes of determining whether removal was proper, we analyze a claim brought under state law, in state court, by a party who has continuously objected to district court jurisdiction over its case, as if that party had been trying to get original federal court jurisdiction all along." *Id.* at 19 n.18.

from Cedar Creek and Pruet for impairing its purported ownership interests would have been a state-law claim. The parties have cited (and the Court is aware of) no federal statute, regulation or constitutional provision that would have conferred a right of action on the State of Alabama to sue corporate entities within the state over real property ownership and leasing rights; rather, those claims would presumably have sounded in state-law rights of action such as trespass, ejectment, quiet title, conversion or the like. By all appearances, then, any coercive claim that Commissioner Guy might have brought against Cedar Creek and Pruet would have been created by Alabama law, not federal law.[7] Again, the parties have not suggested otherwise. Of course, it was Commissioner Guy's burden (as the removing party) to demonstrate that federal question jurisdiction may properly be invoked here. His failure to identify a federal coercive claim he could have brought against plaintiffs constitutes a glaring deficiency in his efforts to satisfy his burden on the Motion to Remand.

As noted, defendant omitted discussion of this precise issue in briefing the Motion to Remand. Nonetheless, reasonable extrapolation from what he did file suggests that his rejoinder to the foregoing would be that the state-law coercive claims he might have brought against Cedar Creek and Pruet would call for application of the so-called "equal footing doctrine," which is a creature of federal constitutional law. U.S. Supreme Court precedent dating back at least as far as 1842 has established and defined the equal footing doctrine as follows:

> "Upon statehood, the State gains title within its borders to the beds of waters then navigable …. It may allocate and govern those lands according to state law subject only to the paramount power of the United States to control such waters for purposes of navigation in interstate and foreign commerce. … The United States retains any title vested in it before statehood to any land beneath waters not then navigable (and not tidally influenced), to be transferred or licensed if and as it chooses."

---

[7] This conclusion is buttressed by the fact that Commissioner Guy's coercive counterclaims actually asserted against Cedar Creek and Pruet sound in purely state-law causes of action, to-wit: trespass and conversion. (*See* doc. 2, ¶¶ 30-41.) Of course, the proper inquiry here is what coercive claims he <u>could</u> have brought against plaintiffs, not what coercive claims he <u>did</u> bring. Nonetheless, the absence of federal coercive claims in Commissioner Guy's Counterclaim bolsters the undersigned's assessment that no such federal coercive claims were available to him.

*PPL Montana, LLC v. Montana*, --- U.S. ----, 132 S.Ct. 1215, 1227-28, 182 L.Ed.2d 77 (2012) (citations and internal quotation marks omitted).[8]  Commissioner Guy's position is that the declaratory judgment claim (and, presumably, any state-law coercive claim he might have asserted against Cedar Creek and Pruet) "turns on" application of the equal footing doctrine, which transforms that state-law claim into a federal question for purposes of establishing removal jurisdiction.

Defendant is correct that plaintiffs' failure to reference the equal footing doctrine in their Complaint does not necessarily preclude federal question jurisdiction.  *See Franchise Tax Board*, 463 U.S. at 22 ("it is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint").  Defendant is also correct that a nominally state-law cause of action may support the exercise of federal question jurisdiction when a substantial federal question is embedded in that claim.  *See, e.g., Jairath v. Dyer*, 154 F.3d 1280, 1282 (11th Cir. 1998) ("in limited circumstances, federal-question jurisdiction may also be available if a substantial, disputed question of federal law is a necessary element of a state cause of action").

Commissioner Guy's reasoning breaks down, however, upon examination of the specific requirements of this "substantial federal question" pathway to § 1331 jurisdiction.  The Eleventh Circuit has emphasized that a substantial federal question can support federal jurisdiction over a state-law cause of action in only a "slim category of cases."  *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1296 (11th Cir. 2008).  The "mere need to apply federal law in a state-law claim," without more, does not give rise to § 1331 jurisdiction.  *Id.* at 1300 (citation omitted); *see also Mannsfeld v. Phenolchemie, Inc.*, 466 F. Supp.2d 1266, 1269 (S.D. Ala. 2006) ("The mere fact that a federal statute or regulation may be implicated and even require some interpretation is not sufficient to create federal jurisdiction."); *Meyer v. Health Management*

---

[8] To appreciate how deeply engrained the historical antecedents of this "equal footing" principle are in federal jurisprudence, one need look no further than the Supreme Court's 1845 decision in *Pollard v. Hagan*, 44 U.S. 212, 3 How. 212, 11 L.Ed. 565 (1845).  In *Pollard*, the Court recognized that "Alabama has been admitted into the union on an equal footing with the original states," such that "to Alabama belong the navigable waters, and soils under them, in controversy in this case, subject to the rights surrendered by the Constitution to the United States."  44 U.S. at 229.  As *Pollard* demonstrates, then, the equal footing doctrine has been a fixture of federal jurisprudence for at least 170 years.

*Associates, Inc.*, 841 F. Supp.2d 1262, 1272 (S.D. Fla. 2012) ("the mere presence of some 'federal issue' should not operate as a password opening federal courts to any state action embracing a point of federal law") (citation and internal quotation marks omitted).  After all, "state courts are generally presumed competent to interpret and apply federal law." *Adventure Outdoors*, 552 F.3d at 1301 (citation omitted).  As held by the Supreme Court, what is necessary to find substantial federal question jurisdiction over a state-law claim is that "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, --- U.S. ----, 133 S.Ct. 1059, 1065, 185 L.Ed.2d 72 (2013).  In short, state-law claims may support § 1331 jurisdiction if they "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Adventure Outdoors*, 552 F.3d at 1296.

Again, because the claim asserted in the Complaint that contains a federal issue is one for declaratory judgment, the analysis properly focuses on coercive claims that Commissioner Guy could have brought against Cedar Creek and Pruet.  Such state-law claims (*e.g.,* trespass, conversion, and so on) might have implicated the equal footing doctrine, which is a federal constitutional issue; however, the necessary criteria are not present to fit this case within the "slim category of cases" in which § 1331 jurisdiction would be supported on that basis.  Compelling arguments could be made regarding several of the *Gunn v. Minton* elements;[9] however, this Court will focus on just one, the "substantiality" requirement.

---

[9] For example, it is not at all clear that the equal footing doctrine is "necessarily raised" in any state-law claim that was or could have been brought by and between Cedar Creek and Pruet, on the one hand, and Commissioner Guy, on the other.  As plaintiffs correctly observe in briefing the Motion to Remand, those state-law claims might be resolved on purely state-law grounds, such as whether the State is barred by doctrines of waiver, estoppel or laches from claiming ownership of the subject riverbeds and streams, given that it has extracted property taxes from plaintiffs (and their predecessors) for those very lands and has expressly authorized the drilling of wells at those very locations.  Likewise, these claims may potentially be resolved via interpretation of certain acts of the Alabama legislature, referenced by both parties in their pleadings, without regard to the equal footing doctrine.  Contrary to defendant's argument, then, this does not appear to be a case that "turns entirely on whether the waterways in question were navigable when the state entered the Union in 1819" (doc. 11, at 7).  As such, it does not appear that the federal question (*i.e.*, the equal footing doctrine) would be "necessarily raised" in any (Continued)

Federal appellate courts "place a strong, if not dispositive, emphasis on the character of the disputed federal issue in evaluating the propriety of substantial federal question jurisdiction." *Adventure Outdoors*, 552 F.3d at 1299. Thus, "resolution of pure issues of federal law provides the strongest basis for resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* (citation and internal quotation marks omitted). By contrast, "to the extent the federal issue in a case is fact-bound – requiring a court [to] apply federal law to the specific facts of a case to decide the state-law claims – it is less likely the case will fit into the small category of cases that may be brought into this Court because they raise a substantial federal question." *Cooper v. International Paper Co.*, 912 F. Supp.2d 1307, 1313 (S.D. Ala. 2012). As the Supreme Court has pointedly opined, "[i]t is not enough that the federal issue be significant to the particular parties in the immediate suit … The substantiality inquiry … looks instead to the importance of the issue to the federal system as a whole." *Gunn*, 133 S.Ct. at 1066 (citing as examples of sufficiently substantial federal issues those in which the Government had a direct interest in a federal forum to vindicate its own administrative actions, the constitutional validity of an act of Congress was directly drawn into question, or there was a need to develop a uniform body of law); *see also Bollea v. Clem*, 937 F. Supp.2d 1344, 1353 (M.D. Fla. 2013) ("Substantiality is evaluated by looking to the importance of the issue to the federal system as a whole. … Issues that will 'change the real-world result' for future cases and future litigants are substantial.").

---

state-law coercive claims that Commissioner Guy might have brought against these plaintiffs, inasmuch as such claims could potentially be resolved without reference to, or application of, the equal footing doctrine. Another possible failing of this case vis a vis the *Gunn v. Minton* elements of substantial federal question jurisdiction is whether this action would be "capable of resolution in federal court without disrupting the federal-state balance approved by Congress," given the potential need for this Court to wade into unsettled questions of Alabama state law in order to resolve this action in its entirety. Plaintiffs have maintained, without dissent from defendant, that "several of [these state-law issues] are likely issues of first impression for Alabama courts." (Doc. 12, at 6.) For this Court to apply settled federal law (*i.e.*, the equal footing doctrine) to a purely state-law claim in this case, while also potentially having to pass on multiple unsettled questions of Alabama law, might indeed disturb the congressionally approved balance of federal and state judicial responsibilities, and weighs against a finding of substantial federal question jurisdiction. It is simply not enough that the state-law claims presented might call for application of a singular, well-defined federal constitutional doctrine, when other aspects of exercising federal jurisdiction in this action might disrupt the federal/state balance.

Application of the equal footing doctrine to the dispute presented here may be vitally important to Cedar Creek, to Pruet, and to Commissioner Guy; however, the Court does not perceive (and the removing defendant has not shown) how or why this question is significant to the federal system as a whole. The equal footing doctrine has been developed, refined and applied by federal courts for nearly two centuries. No suggestion has been made that this action will require trailblazing exploration of heretofore-uncharted tributaries of that doctrine. To the contrary, by all appearances, the legal waters (with respect to the equal footing doctrine) appear to be well-marked and extensively navigated, with the shoals, currents and rapids clearly defined in the extant cartography. The parties are requesting judicial application of these settled federal constitutional principles to a fact-bound and situation-specific context. Thus, resolution of the federal issue embedded in the parties' dispute appears to have negligible significance to the federal system as a whole, and the "substantiality" prong of substantial federal question jurisdiction is lacking. *See Adventure Outdoors*, 552 F.3d at 1300-01 (finding no federal question jurisdiction over state-law claim, even though "the jury would have to apply federal law to reach its decision," where the parties' dispute was factual in nature and "[c]lear federal guidance exists on every question of federal law relevant" to that factual dispute, such that the federal question was not sufficiently "substantial" to trigger § 1331 jurisdiction).

### III.   Conclusion.

Defendant removed this case to federal court and therefore bears the burden of establishing a proper jurisdictional footing. Diversity jurisdiction is unavailable; however, Commissioner Guy contended that there was a federal question embedded in the declaratory judgment cause of action asserted by Cedar Creek and Pruet. For a declaratory judgment claim, the proper jurisdictional inquiry is whether the defendant could have filed a coercive action against the plaintiffs arising under federal law. For aught the pleadings show, the only coercive claims Commissioner Guy could have asserted would have arisen under state law. Nonetheless, defendant protests that those claims, even though created by state law, would have required application of federal constitutional law, in the form of the equal footing doctrine. The trouble is that the mere need to consult or apply federal law in a state-law claim does not satisfy the prerequisites for substantial federal question jurisdiction. The Court finds that no "substantial" federal question (within the meaning of applicable law) is presented here, given the fact-bound and situation-specific nature of the dispute; therefore, and with due regard for the principle that

-11-

all uncertainties as to removal jurisdiction must be resolved in favor of remand, this action cannot be squeezed within the slim category of claims in which substantial federal question jurisdiction may be recognized.  For that reason, § 1331 jurisdiction is lacking.  The Motion to Remand (doc. 5) is **granted**, and this action is **remanded** to the Circuit Court of Conecuh County for further proceedings.

DONE and ORDERED this 18th day of February, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE